IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ALFONZA L. WARD,

    Petitioner,

vs.                                            Case No. 4:11cv75-MP/CAS

KENNETH S. TUCKER, as Secretary of
Florida Department of Corrections,

    Respondent.

_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Alfonza L. Ward, proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the instant § 2254 petition should be denied on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## Procedural History

On February 18, 2011, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his 2006 conviction and sentence for robbery, following a jury trial in case number 2005-CF-3451, in the Second Judicial Circuit, Leon County, Florida.  Docs. 1 and 8.

This Court directed Petitioner to amend his petition.  Doc. 6.  On July 26, 2011, Petitioner filed an amended § 2254 petition.  Doc. 8.  This Court directed service of the amended § 2254 petition on Respondent, and required Respondent to file an answer, motion, or other response.  Doc. 9.

Thereafter, Respondent filed a motion to dismiss the amended petition, attaching exhibits containing portions of the record.  Doc. 12.  Petitioner has not filed a reply thereto, although given time to do so.  Doc. 9.

This Court now considers Petitioner's amended § 2254 petition (Doc. 8), which raises four grounds, together with Respondent's motion to dismiss amended petition and exhibits thereto (Doc. 16).  As explained below, because Petitioner's claims are either unexhausted or lack merit, the § 2254 petition should be denied.

## State Court Proceedings

As referenced above, in 2006, Petitioner was convicted of robbery and sentenced to 30 years in prison as a violent career criminal (VCC).  Doc. 16, Ex. G.  Petitioner appealed his judgment and sentence to the First District Court of Appeal (DCA).  On September 5, 2008, the First DCA issued a per curiam affirmance without opinion for the direct appeal; the mandate issued September 23, 2008.  See Ward v.

State, 989 So. 2d 643 (Fla. 1st DCA 2008) (table); Doc. 16, Ex. L; online docket for case number 1D06-6357 at www.1dca.org.

On August 21, 2009, Petitioner filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Doc. 16, Ex. M.  Petitioner raised two similar grounds in his Rule 3.850 motion, asserting he was illegally sentenced to an enhanced sentence as a VCC, pursuant to section 775.084(1)(d), Florida Statutes, because the convictions used to enhance his sentence did not satisfy the sequential sentencing requirement of section 775.084(5), Florida Statutes, as a matter of law, and the resulting error violated his state and federal constitutional rights to a "full and fair" hearing, due process of law, and equal protection under the law.  *Id.* at 3-4, 7.  The first claim focused on a prior conviction for aggravated battery in case number 98-3038, and the second claim focused on a prior conviction for possession of a firearm by a convicted felon in case number 97-2485.  *Id.* at 4, 7.

By order dated September 13, 2010, the state trial court denied Petitioner's Rule 3.850 motion.  Doc. 16, Ex. N.  The trial court made the following findings:

> Defendant asserts that his VCC designation is illegal because his prior felonies do not satisfy Florida Statute section 775.084(5). Defendant asserts that he was sentenced in the same proceeding for Leon County case numbers 1996-CF-4569, 1997-CF-2485 and 1998-CF-3038. Defendant concludes that those 3 prior felonies were, therefore, not sentenced separately.
>
> The 3 prior felonies that the State relied on for Defendant's VCC designation are case numbers **[1]** 1990-CF-3610, **[2]** 1998-CF-3038, and either **[3a]** 1996-CF-4569 or **[3b]** 1997-CF-2485.[1] *Exh. 1-12/06/05*

---

[1]Hereafter, this Report and Recommendation uses the bolded and bracketed numbers – **[1]**, **[2]**, **[3a]**, and **[3b]** – to represent the corresponding case numbers, for

> *Motion; Exh. 2-11/28/06 Sentencing Transcript, pp. 1-2, 4, 9-13.* Defendant was sentenced in case number **[1]** on 09/24/90. *Exh. 2 at pg. 11; Exh. 3- 09-24/90 Judgment and Sentence, 1990-CF-3610; Exh. 4- Docket Report, 1990–3610.* Defendant's attachments to his motion show that he was sentenced in **[3a]** and **[3b]** on 09/16/07. *Exh. 5- 09/16/07 Judgment and Sentence, 1996-4569; Exh. 6- 09/16/07 Judgment and Sentence, 1997-2485; see also Exh. 7-Docket Report, pp. 2-5, 1996-4569; Exh. 8- Docket Report, pp. 2-6, 1997-2458.* The Court correctly counted only 1 of those 2 cases as a prior felony. Defendant's attachments further show that he was sentenced in **[2]** on 10/22/99. *Exh. 9- 10/22/99 Judgment and Sentence, 1998-3038; see also Exh. 10- Docket Report, 1998-3038.* The fact that he may have been sentenced in **[2]** during the same proceeding as his VOP sentencings in **[3a]** and **[3b]** does not preclude the Court from counting **[2]** as a third prior felony. <u>State v. Richardson</u>, 915 So. 2d 86 (Fla. 2005); <u>Nesbitt v. State</u>, 946 So. 2d 609 (Fla. 4th DCA 2007). Notably, the Court properly did not count either of the 10/22/99 VOPs (in **[3a]** or **[3b]**) as an additional prior felony.
>
> In summary, Defendant's first prior felony for purposes of 775.084(5) is case number **[1]**, for which he was sentenced on 09/24/90. His second prior felony is either case number **[3a]** or **[3b]** [2], for which he was sentenced on 09/16/07. His third prior felony is case number **[2]**, for which he was sentenced on 10/22/99. Defendant's VCC designation is not illegal.

*Id.*

Petitioner appealed the order denying his Rule 3.850 motion to the First DCA, but did not file an initial brief. On December 30, 2010, the First DCA per curiam affirmed the appeal without opinion, and the mandate issued January 25, 2011. *See* <u>Ward v. State</u>, 50 So. 3d 1140 (Fla. 1st DCA 2010) (table); Doc. 16, Ex. P; online docket for 1D10-5449 at <u>www.1dca.org</u>.

---

ease of reading and explanation.

[2]In the trial court's order, the case number here indicated is 1997-24<u>58</u>, rather than 1997-24<u>85</u>, as previously indicated; thus, it appears the trial court's order simply reversed the last two numbers by mistake.

On February 18, 2011, Petitioner filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  As indicated above, this Court directed Petitioner to amend his petition (Doc. 6), and he filed his amended § 2254 petition on July 26, 2011 (Doc. 8).

## Analysis

In the amended § 2254 petition, Petitioner asserts four grounds: (1) the predicate offense in 1996-CF-4569 (**[3a]** above) used to enhance his sentence to VCC does not meet the sequential sentencing requirement; (2) the predicate offense in 1997-CF-2485 (**[3b]** above) used to enhance his sentence to VCC does not meet the sequential sentencing requirement; (3) the prosecutor impermissibly pointed to Petitioner during the questioning of a witness about identification; and (4) the show-up conducted by the Tallahassee Police Department was improper.  Doc. 8 at 4-5.

In the motion to dismiss, the Respondent argues Grounds 1 is raised for the first time in the amended § 2254 petition and should be dismissed because it is untimely and does not relate back.  Doc. 16 at 4.  Respondent acknowledges, however, that "it may be arguable that the claim presented in Ground One . . . relates back to the timely original petition," and then argues that claim is unexhausted because it is not the same claim presented to and on which the state court ruled.  Id. at 7.  It should be noted here, as indicated above, that Petitioner filed the amended petition in response to this Court's order.  In addition, a review of the post-conviction court's order indicates that court did address **[3a]** in finding the VCC designation not illegal.

Respondent argues Ground 2 was presented in the original timely § 2254 petition and was also presented to the state court in the second claim of the Rule 3.850 motion. *Id.* at 10. Respondent asserts this ground raises a pure issue of state law, however, and is not cognizable in a federal habeas proceeding. *Id.* at 11-12.

Respondent argues that Grounds 3 and 4 were not exhausted in state court, cannot now be raised, and are thus procedurally defaulted. *Id.* at 12, 26-28. This argument thus challenges the sufficiency with which those grounds were presented in the appellate brief filed in the direct appeal. *Id.* at 15, 26-28. As Respondent acknowledges, the arguments presented in Grounds 3 and 4 were presented in the Initial Brief; however, the brief presents them in the context of sub-arguments under the main point asserting cumulative error. *Id.* at 15, 26. Respondent further argues that Petitioner does not assert a violation of his federal constitutional rights and, even if he did present a federal claim, it is unexhausted and procedurally defaulted. *Id.* at 13, 17, 19, 24.

Because, as explained below, a review of the record attached to Respondent's motion, as well as pertinent law, reveals that none of Petitioner's claims warrant federal habeas relief, the amended § 2254 petition should be denied on the merits. This renders moot Respondent's motion to dismiss.

<u>Grounds 1 and 2: Predicate Offenses Used to Enhance Sentence</u>

In Grounds 1 and 2, Petitioner argues, as he did in his Rule 3.850 motion, that the State impermissibly used offenses **[3a]** and **[3b]** to enhance his sentence as a VCC. As indicated above, the state post-conviction court addressed these claims on the

merits and denied them in a written order.  Doc. 16, Ex. N.  As that court found, and as documents in the record indicate, Petitioner was sentenced for these offenses on September 16, 2007.  *Id.* at 1; *see* Doc. 16, Ex. F at 12, 32-33 (transcript of sentencing hearing).  The post-conviction court further found that, in applying the VCC enhancement, the sentencing court counted only one of these two offenses as a prior felony.  Doc. 16, Ex. N at 2; *see* Doc. 16, Ex. F at 10-22, 33-34 (transcript of sentencing hearing).  The state post-conviction trial court thus concluded Petitioner's VCC designation was not illegal.  The First DCA affirmed this order on appeal.

A federal court may not grant a state prisoner's habeas petition "unless the relevant state court decision 'was contrary to, or involved an unreasonable application of, <u>clearly established Federal law</u>, as determined by the Supreme Court of the United States.'"  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 121 (2009) (emphasis added); *see* 28 U.S.C. § 2254(d)(1).  Petitioner here does not assert an unreasonable application of clearly established federal law, and it was not unreasonable for the state court to conclude Petitioner's VCC designation was not illegal under Florida law.  Indeed, that court properly found the designation was not illegal.  *See* Fla. Stat. § 775.084(1)(d) (2005); <u>Zink v. State</u>, 951 So. 2d 34, 34-35 (Fla. 2d DCA 2007) (explaining that although two prior judgments of conviction for robbery and escape entered on same day could not be counted separately as predicate convictions for VCC sentencing, prior convictions for robbery and burglary in addition to those for robbery and escape supported VCC sentencing).  Accordingly, Grounds 1 and 2 should be denied.

### Ground 3:  Prosecutor Pointing at Petitioner

In Ground 3, Petitioner asserts that, during his trial, the prosecutor pointed at him while questioning a witness about identification of the perpetrator.  Doc. 8 at 5. Petitioner references Exhibit E, attached to the amended § 2254 petition, which consists of a portion of the trial transcript.  This portion of the transcript reflects that a witness on the stand was describing the perpetrator as "wearing . . . like a tan shirt, like a collared shirt, short sleeves and tan pants" and sunglasses, with his hair short "almost like a buzz cut."  *Id.*  The witness is asked whether that person is in the courtroom and the witness replies, "Yes, sir."  *Id.*; Doc. 16, Ex. D at 33.  The following then transpired:

Q Could you please point to him and identify him by what he's wearing?

[Defense Counsel]: Objection.  Can we approach?

THE COURT: Sidebar.

  (SIDEBAR CONFERENCE AS FOLLOWS:)

[Defense Counsel]:  Judge, I'm going to move for a mistrial. I object to the fact that the prosecutor pointed to my client when he asked her to identify him.  I don't think that's proper. I'm going to ask for a mistrial based on that; he points to the person. That's not proper to point to the person and then ask to identify who it is. Then he's identifying the person and not the witness.

[Prosecutor]:  I think that's a bit of a stretch. I mean, I don't see how it would possibly be a mistrial.  She either can identify him or can't identify him.

THE COURT:  I'm going to deny the motion for mistrial. My observation is that he, the Assistant State Attorney, gestured in the general direction, but did not point directly at the defendant.  Plus, I would also note that she has clearly identified the defendant in her testimony.  And based upon – the representation is it will come into evidence at a later time, the defendant's confession, I think that is not sufficient conduct that would merit granting a

mistrial.

Now, is there any curative instruction that you would like me to give to the jury? I figure that a curative instruction could –

[DEFENSE COUNSEL]: No, sir.

THE COURT: – would not necessarily assist in any way.

[DEFENSE COUNSEL]: No, sir.

THE COURT: Okay.

Thank you.

(SIDEBAR CONCLUDED)

THE COURT: You may proceed.

BY [THE PROSECUTOR]:
Q Again, do you see the person who passed that note to you in the courtroom today?

A Yes, sir.

Q Could you please point to him and identify him by what he's wearing?

A It's that man right there in the blue striped collared shirt.

BY [THE PROSECUTOR]: Your Honor, may the record reflect the witness has identified the defendant?

THE COURT: Noted.

Doc. 16, Ex. D at 33-36.  Thus, Petitioner essentially asserts the trial court erred in denying his motion for mistrial.

"A ruling on a motion for a mistrial is within the sound discretion of the trial court and should be 'granted only when it is necessary to ensure that the defendant receives a fair trial.'" Gore v. State, 784 So. 2d 418, 427 (Fla. 2001) (quoting Goodwin v. State,

751 So. 2d 537, 547 (Fla. 1999)).  Here, from a review of the relevant portion of the transcript, quoted above, it appears the trial judge in effect sustained defense counsel's objection, given the judge's offer to give a curative instruction, although the trial judge did also indicate that the prosecutor only gestured in Petitioner's direction and did not point directly at him.  The judge declined to grant a mistrial, explaining that the prosecutor did not point directly at Petitioner and the witness clearly identified Petitioner in her testimony, and further that Petitioner's confession would be coming into evidence.  The record supports this determination and reflects that Petitioner's videotaped confession did come into evidence.  *See* Doc. 16, Ex. D at 33-36 (quoted *supra*), 109-16 (portions of investigator's testimony and playing of Petitioner's videotaped confession during which Petitioner states, "They thought they was giving me a ride. . . . To cash a check . . . or something . . . Inside that the truck . . . And I went in.  And I wasn't armed or anything. . . . And I just passed the note" that demanded 100s and 50s); *see also* Doc. 16, Ex. D at 61-63 (testimony of arresting officer that Petitioner, at time of arrest approximately 20 minutes after robbery, was wearing "a tan and brown printed type shirt" and "a goldish brown color pants" and that Petitioner voluntarily stated "he was the only one that went in the bank" and the other people in the vehicle with him at the time of arrest "had nothing to do with that, that it was all him").  Given this, the trial court did not abuse its discretion in denying Petitioner's motion for mistrial.

Even assuming Petitioner has exhausted a federal constitutional claim with respect to this issue, Petitioner is not entitled to relief.  Petitioner does not attempt to show this ruling was based on an unreasonable determination of the facts and

Petitioner does not assert it is contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to relief and Ground 3 should be denied.

### Ground 4: Show-up Identification

In Ground 4, Petitioner challenges the show-up conducted by the Tallahassee Police Department. Doc. 8 at 5. Petitioner asserts that, while sitting in the back of a police vehicle, he was instructed to step out and then some unknown person "supposedly identif[ied] [him] while [he] was hand-cuffed." *Id.* Petitioner later learned it was a witness who testified at his trial. *Id.* In support of this claim, Petitioner references Exhibit F, attached to the amended § 2254 petition, which consists of a portion of the trial transcript. This portion of the transcript reflects that defense counsel moved for a judgment of acquittal after the State rested its case. *Id.* In this motion, defense counsel argued the show-up identification of Petitioner was improper and without a proper identification, the State failed to meet its burden. *Id.* Petitioner's claim thus references the earlier denial by the trial court of a motion for mistrial concerning the show-up method of identification.

In particular, the following transpired during the presentation of the State's case and questioning of the bank teller/victim:

> Q At Lake Bradford and Gaines Street, the person that was – that was shown to you, did you pick him out because he was the person who had passed you that note, or did you pick him out because the police told you that he was the person who had robbed you?

A I picked him out because that was the man that had robbed me. That was the man that had come up to my window, my teller station.

Q The person at the bank who passed you the note, that was the same person at the show-up?

A Yes, sir.

Q Are you positive of that?

A I am absolutely sure, without a doubt.

. . . .

[DEFENSE COUNSEL]: Yes, sir, Your Honor. Judge I move for a mistrial. The identification that was given was clearly tainted by the conduct of law enforcement telling the primary witness in this case, that is the bank teller . . . prior to the show-up being conducted, which is already a questionable method of identifying someone. But to couple that with telling her ahead of time that, we caught the robber, come and see if you can identify him. I mean, that's tantamount to saying, this is your guy, we got him. Just go through the motions and come tell us, you know, verify what we already think that is, to say this is the robber. And, ordinarily, it might be curable. The problem is, this was all mentioned in opening statement, and which puts me in a position of having to move for a mistrial based on the ID.

It's clearly mistrial material when the police tell the primary witness against my client that they caught the robber, and then she is taken out to identify an African-American male, who in her mind already, and I think she testified to that, they got the guy. I mean it's already a forgone conclusion; this is the guy. And it's not necessarily the prosecution's fault, but whoever it was that made that statement, which obviously it was made, because [the bank teller] says it was made, clearly taints the identification, clearly taints opening statement, clearly taints the entire trial, and I would move for mistrial.

THE COURT: Mr. [Prosecutor]?

[PROSECUTOR]: Judge, I think the witness cleared it up, in that she said she was taken to a show-up to point out somebody that matched a similar description. I mean, it's inherent that if she's going to a show-up, she is obviously going to possibly assume that that's the person. But again, on the witness stand she said that, I didn't pick him out because the police brought him out.

She said, the reason I picked him out was because he was a person who passed the note; he was the person who had robbed me. I think the defense is making a bit of a stretch. Again, we're talking about verbiage.

Now, I plan on calling Investigator Troop to the stand and he can clear everything up.

THE COURT: Anything else, Mr. [Defense Counsel], on that point?

[DEFENSE COUNSEL]: Just that if clearing everything up means officer Troop is going to say he didn't make that statement, which under these circumstances is usually what happens, the witness says one thing and the officer says something else, it's still not going to cure what is already out there.

THE COURT: Are there any cases that anyone can cite me that have dealt with this express issue?

[DEFENSE COUNSEL]: Off the top if my head, no, Your Honor. I wasn't expecting it to happen.

THE COURT: I'm going to deny the motion for mistrial. The show-up method of identification, which as I understood it has been accepted by appellate courts, itself – lends itself to that issue, that credibility issue that can be made by defense counsel on either cross or closing, that, you know, one is taken out, and at the scene someplace, not necessarily at the scene, but at a place or place to say, is that the person. So, that is a matter, you know, that is not significantly different from the testimony that was heard. And I think it's more a matter of material to be used for purposes of credibility argument and weight argument with regard to that witness. And again, I don't see where the opening statement itself in any

> way was misleading based upon the testimony I've heard so far, because the opening statement clearly identified it as a show-up and distinguished between a show-up and a photo line-up. And it's clear to the jury. The circumstances at least at this pont is to what the evidence shows with regard to the show-up. I think it's more a matter of discussing with the jury the issue of validity or weight or credibility of the witness's testimony. So I'm going to deny the motion for mistrial.

Doc. 16, Ex. D at 42-47.  Thus, again, Petitioner essentially asserts the trial court erred in denying his motion for mistrial.

Even assuming Petitioner has exhausted a federal constitutional claim with respect to this issue, Petitioner is not entitled to relief.  "To violate due process, an identification procedure used by the police must be unnecessarily suggestive and create a substantial risk of misidentification."  Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987) (citing Neil v. Biggers, 409 U.S. 188 (1972)).  "Factors considered in determining reliability include 'the opportunity to view the witness at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'"  Id.  (quoting Neil, 409 U.S. at 199).  "[S]how-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation."  Id.

In this case, the bank teller/victim testified she had a clear view of Petitioner's face during the robbery.  Doc. 16, Ex. D at 32.  She described Petitioner and what he was wearing during the robbery, and this was consistent with the arresting officer's description of what Petitioner was wearing when he was arrested 20 minutes after the

robbery.  *Id.* at 34-35 (testimony of victim/bank teller), 61-63 (testimony of arresting officer).  She testified that Petitioner was the man who passed her the note.  *Id.* at 35.  After the robbery, the police said they had "caught the robber" in the vehicle the bank employees had described; the police took the victim/bank teller in an unmarked car to another location where she identified Petitioner, as they brought him out of a police car.  *Id.* at 39-40.  The police told her they were going on a car ride to see if she could identify the robber.  *Id.* at 41.  She testified that she "picked him out because he was the man that had robbed me" and "was the man that had come up to my window, my teller station."  *Id.* at 43.  She testified she was "absolutely sure, without a doubt."  *Id.*

Under these circumstances, the trial court did not err in declining to grant a mistrial because of the show-up identification.  See Johnson, 817 F.2d at 729 (finding identification reliable where "Jordan had a good opportunity to observe the men in broad daylight, both before and after they entered and left the bank, he thoroughly described them to the police, he was certain of the identification at the time, and he identified the suspects only minutes after the crime while his memory was still fresh" and "[u]nder these circumstances, Jordan's out-of-court identification was not unreliable eve if it had been impermissibly suggestive, and Johnson's trial was not rendered fundamentally unfair by the trial court's admission of Jordan's testimony").  See also United States v. Walker, 201 F. App'x 737 (11th Cir. 2006) ("Walker argues that the identification was unduly suggestive because Walker was presented for identification singly, in handcuffs, and surrounded by police officers. . . . Walker cites no authority for his position that identification of a single individual is intrinsically suggestive, and our precedent suggests

that it is not."). Petitioner does not attempt to show this ruling was based on an unreasonable determination of the facts and Petitioner does not assert it is contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d). Petitioner is not entitled to relief and Ground 4 should be denied.

## Conclusion

Based on the foregoing, Petitioner is not entitled to federal habeas relief. The amended § 2254 petition (Doc. 8) should be denied on the merits. Given this recommendation, Respondent's motion to dismiss may be denied as moot.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner's second amended § 2254 petition on the merits (Doc. 10).  Given this recommendation, the Court should also **DENY** Respondent's motion to dismiss (Doc. 16).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida on June 18, 2012.

 S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**